IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| SHADE, INC., ) | |
| ) | CASE NO. BK05-43546-TJM |
| Debtor(s). ) | A07-4064-TLS |
| JACK L. IRWIN, ) | |
| ) | |
| Plaintiff, ) | CH. 7 |
| ) | |
| vs. ) | |
| ) | |
| ADVANCED POLYMER COATINGS, LTD., ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is before the court on the motion for summary judgment by defendant Advanced Polymer Coatings, Ltd. (Fil. #52) and resistance by the plaintiff (Fil. #87). Terry K. Barber represents Jack L. Irwin, and Victor E. Covalt, III, represents Advanced Polymer Coatings, Ltd. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

Because the court, upon review of the matter, has determined that it lacks subject matter jurisdiction over this adversary proceeding, it will dismiss the lawsuit.

I. BACKGROUND

On September 9, 2005, Shade, Inc., the debtor, filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Nebraska at Case No. BK05-43546-TJM. The case was later converted to a Chapter 7 proceeding and Joseph H. Badami was appointed trustee of the bankruptcy estate.

On July 31, 2006, Mr. Badami filed a motion in the bankruptcy case to sell various items of the debtor's personal property ("Shade Property") at public auction. The Shade Property was located on real estate owned by Mr. Irwin and leased to the debtor. Mr. Irwin resisted the trustee's motion to sell, but participated in the auction and bid on the Shade Property. Mr. Irwin was not the high bidder and the bankruptcy court ultimately confirmed the sale of the Shade Property to Advanced Polymer Coatings, Ltd. ("APC") for a price of $181,000. Plaintiff filed a motion to reconsider the sale, and then appealed the order (*see* Fil. #168 in Case No. BK05-43546-TJM), which ruling was subsequently affirmed by the United States District Court for the District of Nebraska in March 2007 (*see* Fils. #223 and #224 in Case No. BK05-43546-TJM).

In September 2006, APC attempted to remove the Shade Property from Mr. Irwin's building, but Mr. Irwin disputed the removal and refused to allow APC access to the building. Mr. Badami brought the matter to the attention of the bankruptcy court, which ordered Mr. Irwin to allow APC to remove the Shade Property without interference (*see* Fil. #185 in Case No. BK05-43546-TJM).

In January 2007, after APC had removed the Shade Property from Mr. Irwin's building, Mr. Irwin filed an application for administrative expenses seeking $221,456.73. He asserted that APC damaged and/or converted items of his property during the removal of the Shade Property (*see* Fils. #205 and #215 in Case No. BK05-43546-TJM).

The bankruptcy court ruled that Mr. Badami and the bankruptcy estate were not responsible for the alleged actions of the purchaser and denied any administrative claim for damages caused by the purchaser in removal of the Shade Property and denied any claim against the bankruptcy estate for removal of any of Mr. Irwin's property. The only administrative claim this court allowed was for post-petition rent, utilities, and repairs of frozen water pipes (*see* Fil. #238 in Case No. BK05-43546-TJM). Plaintiff did not appeal that decision.

On the same day the administrative claim related to the removal of property was denied, this court also entered an order authorizing Mr. Badami to distribute the net proceeds to West Gate Bank, the apparent secured creditor. Mr. Irwin appealed to the Bankruptcy Appellate Panel for the Eighth Circuit, but did not obtain a stay pending appeal. The trustee distributed the proceeds in the meantime, so the appellate court dismissed the appeal as moot (*see* Fil. #250 in Case No. BK05-43546-TJM).

Thereafter, on September 12, 2007, Mr. Irwin filed this adversary proceeding against the debtor, Mr. Badami, West Gate Bank, and APC. The complaint contains six claims for relief:

1. a request for a declaratory judgment that the fixtures were not property of the bankruptcy estate and the debtor is required to account to Mr. Irwin for their removal;

2. that the debtor and Mr. Badami breached their fiduciary duties to Mr. Irwin by failing to protect the fixtures;

3. that the defendants converted the fixtures;

4. that West Gate Bank breached a contract with Mr. Irwin;

5. that the defendants were unjustly enriched by the taking and selling of the fixtures; and

6. that if the fixtures were property of the bankruptcy estate, the defendants hold the proceeds in constructive trust for Mr. Irwin.

Mr. Irwin subsequently dismissed the trustee and West Gate Bank, leaving APC as the only defendant. The claims remaining appear to be that APC removed from Mr. Irwin's premises property that Mr. Irwin argues were fixtures, and, in doing so, APC damaged the real estate. APC filed a counterclaim against Mr. Irwin for tortious interference with APC's contractual or business relationship with the bankruptcy trustee in connection with the purchase of the debtor's personal property.

In addition to this adversary proceeding, Mr. Irwin filed a complaint in the District Court of Lancaster County, Nebraska, in April 2008, against West Gate Bank and Mr. Badami, seeking compensation and damages for APC's alleged conversion of certain fixtures and the destruction of some of Mr. Irwin's property, and damages for the trustee's payment of the sale proceeds to West Gate Bank. The trustee removed that lawsuit to the bankruptcy court, where the claims for relief against Mr. Badami was dismissed with prejudice, and the claims for relief against West Gate Bank were remanded to state court because the bankruptcy court lacked jurisdiction over what was at that point a non-core, unrelated proceeding (*see* Fil. #35 in Adv. Proc. No. A08-4033-TLS).

## II.  SUBJECT MATTER JURISDICTION

The bankruptcy court's subject-matter jurisdiction flows from 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). As set forth in 28 U.S.C. § 1334(a) and (b), bankruptcy courts (through the district courts) have exclusive jurisdiction over all cases under title 11, and original but not exclusive jurisdiction over all core proceedings arising under title 11 or arising in or related to a case under title 11.

"Core proceedings" are those which arise only in bankruptcy or involve a right created by federal bankruptcy law. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995). The difference between "arising under" and "arising in" was illustrated by the bankruptcy court in *C & B, L.L.C. v. Grubbs Emergency Services, Inc. (In re Grubbs Construction Co.)*, 305 B.R. 476 (Bankr. W.D. Ark. 2003):

> A proceeding "arises under" title 11 if a claim asserted is created by or based on a provision of the bankruptcy code. An action by a trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be acting based on a right conferred by the bankruptcy code. A proceeding "arises in" a case under title 11 if it is not based on any right expressly created by the bankruptcy code but has no existence outside the bankruptcy case. Examples of "arising in" would be allowance or disallowance of a claim, orders in respect to obtaining credit, confirmation of plans, and orders permitting the assumption or rejection of contracts.

305 B.R. at 480 (footnotes omitted).

If jurisdiction cannot be established via the "arising in" or "arising under" prong, then jurisdiction under the "related to" prong must be considered. A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.

28 U.S.C. § 157(c)(1). If the parties consent, the bankruptcy judge may enter judgment in the case. 28 U.S.C. § 157(c)(2). If the parties do not consent to the bankruptcy court's exercise of jurisdiction over non-core matters, then the bankruptcy judge prepares proposed findings of fact and conclusions of law for the district court. 28 U.S.C. § 157(c)(1).

The scope of "related to" jurisdiction is broad, but it is not unlimited. *GAF Holdings, LLC v. Rinaldi (In re Farmland Indus., Inc.)*, 378 B.R. 829, 833-34 (B.A.P. 8th Cir. 2007). There must be a nexus between the civil lawsuit and the bankruptcy case. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). The test for whether a civil proceeding is related to a case under title 11 is whether the outcome of the proceeding could conceivably have any effect on the bankruptcy estate. *Dogpatch Prop., Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch, U.S.A., Inc.)*, 810 F.2d 782, 786 (8th Cir. 1987). In other words, if the outcome of the civil proceeding could alter the debtor's rights, liabilities, options, or freedom of action and in any way impacts upon the handling and administration of the bankruptcy estate, the action is related. *Id.*; *Specialty Mills*, 51 F.3d at 774.

### III. DISCUSSION

The same analysis applies to the present case. This is a lawsuit between the debtor's landlord who unsuccessfully bid on the debtor's assets and a third party. The parties concede this is a non-core proceeding (*see* Def.'s Br. in Supp. of Mot. for Summ. J., at 4, ¶ 7 (Fil. #86) and Pl.'s Br. in Supp. of Resistance, at 1 (Fil. #114)). The claims raised are conversion, damage to property, and tortious interference with a business relationship. None of those claims are created by or based on a provision of the Bankruptcy Code. Rather, they are state-law tort claims that exist separately from the bankruptcy case. The trustee has been dismissed from this case, so the estate is no longer involved in the lawsuit. The sale of the personal property is final and the proceeds have been distributed. There were no assets to administer for the benefit of the estate's creditors, and the bankruptcy case is ready to be closed. The outcome of this lawsuit will not affect the debtor or any other creditor, as the recovery of any monetary damages will be solely for the benefit of Mr. Irwin and/or APC. The lawsuit will have no conceivable effect on the bankruptcy estate. In that respect, the facts of this case are similar to those of *Farmland Industries*, *supra*, in which the Bankruptcy Appellate Panel ruled that the bankruptcy court lacked jurisdiction to decide state-law disputes between third parties in which the bankruptcy estate has no interest:

> Applying the "related to" test to GAF's complaint we conclude that the bankruptcy court lacks subject matter jurisdiction over it. The complaint is between a disgruntled entity which did not purchase the Coffeyville complex and certain non-debtor individuals and entities who played a role in the sale. The complaint does not seek to undo the sale; rather it seeks damages for the tort of intentional interference with a business expectancy. The sale is a necessary element of the alleged tort and therefore a pre-requisite to GAF's suit. *See Lange v. Schropp (In re Brook Valley VII, Joint Venture)*, 496 F.3d 892, 899 (8th Cir. 2007).
>
> The facts underlying the complaint center around the conduct of a sale of assets from Farmland's bankruptcy estate. However, common facts do not create subject matter jurisdiction. *Pacor*, 743 F.2d at 994. The bankruptcy judge is familiar

> with the sale and the entities involved in the dispute because he has ruled on the validity of the sale on at least three prior occasions: when he approved the sale in November of 2003; when he denied GAF's motion seeking to set aside the sale order; and when he entered the amended sale order. Nonetheless, judicial economy does not justify jurisdiction. *Id.*
>
> No conceivable bankruptcy administrative purpose will be served by GAF's complaint. *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 837 (4th Cir. 2007). GAF is not seeking recovery for the benefit of Farmland's creditors or interest holders. To the contrary, GAF named the Liquidating Trustee as a defendant for the sole purpose of seeking a determination that Farmland's creditors and interest holders have no right to the tort damages it seeks in the complaint. The outcome of the suit will have no impact on the distributions to creditors or interest holders pursuant to a liquidating plan which was confirmed almost four years ago. GAF is merely seeking recovery for itself.
>
> The defendants argue that GAF's complaint is related to the Farmland bankruptcy because it implicates the bankruptcy court's orders approving the sale. In ruling on the complaint, according to the defendants, the bankruptcy judge is merely enforcing his own prior orders. The fact that an existing order of a court may impact a subsequent dispute between different parties does not create subject matter jurisdiction over the new dispute. To the extent the complaint is a collateral attack on prior orders, a defense grounded on such a theory can be presented to and evaluated by any tribunal with subject matter jurisdiction over the controversy.

*Farmland Indus.*, 378 B.R. at 834-35.

Accordingly, this adversary proceeding should be dismissed for lack of subject matter jurisdiction.

IT IS ORDERED: For the reasons stated above, this court does not have subject matter jurisdiction over the claims remaining in this adversary proceeding. The lawsuit is hereby dismissed.

DATED:    April 16, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
   Terry K. Barber
   *Victor E. Covalt, III
   U.S. Trustee
*Movant is responsible for giving notice to other parties if required by rule or statute.